**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| *IN RE* MATTER OF THE APPLICATION OF BANCO DE LOS TRABAJADORES FOR AN ORDER TO TAKE DISCOVERY UNDER 28 U.S.C. § 1782<br><br>            Applicant. |

Case No. _____

**MEMORANDUM OF LAW IN SUPPORT OF PETITION AND APPLICATION FOR AN**
**ORDER TO TAKE DISCOVERY UNDER 28 U.S.C. § 1782**

**TABLE OF CONTENTS**

*TABLE OF AUTHORITIES*................................................................................................*iii*

I.    **INTRODUCTION**........................................................................................... 1

II.   **JURISDICTION AND VENUE**.................................................................... 2

III. **PARTIES** ....................................................................................................... 3

    *A.   Bantrab*.................................................................................................. 3

    *B.   Standard Chartered*............................................................................. 4

IV.   **RELIEF REQUESTED** ................................................................................ 4

V.    **MEMORANDUM OF LAW**......................................................................... 5

    *A.   Requirements for Discovery under 28 U.S.C. § 1782*...................... 5

    *B.   The Application Satisfies the Statutory Requirements of 28 U.S.C. § 1782*.... 6

        *(1)  Standard Chartered is Found in this District* ................................... 6

        *(2)  The Request Seeks "Evidence" within the Meaning of 28 U.S.C. § 1782* ...... 8

        *(3)  The Evidence Requested is "For Use" in the Guatemala Proceedings, Each of which is a "Foreign Proceeding"* ...................................................... 8

        *(4)  Bantrab is an "Interested Person"* ............................................... 10

    *C.   All the Intel Discretionary Factors Favor Granting the Application* ............ 10

        *(1)  Standard Chartered is Not A Party In the Guatemala Proceedings*............. 11

        *(2)  The Nature and Receptivity of the Foreign Tribunal to the Requested Discovery*........................................................................... 11

        *(3)  Bantrab is Not Circumventing any Foreign Law Proof-gathering Restrictions* ........................................................................... 12

        *(4)  The Discovery Requests are Not Unduly Intrusive or Burdensome* ............. 13

    *D.   28 U.S.C. § 1782 Applications Are Typically Filed Ex Parte*......................... 14

VI.   **CONCLUSION** ...................................................................................... 144

## TABLE OF AUTHORITIES

**Cases**

*Application of Gianoli Alduante*
   3 F.3d 54 (2d Cir. 1993)............................................................................... 12

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*
   673 F.3d 76 (2d Cir. 2012)............................................................................ 12

*Euromepa S.A. v. R. Esmerian, Inc.*
   51 F.3d 1095 (2d Cir. 1995)........................................................................... 11

*Gushlak v. Gushlak*
   486 F. App'x 215 (2d Cir. 2012) .................................................................. 14

*In re Accent Delight Int'l Ltd.*
   869 F. 3d 121, 133 (2d Cir. 2017)................................................................... 8

*In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*
   121 F.3d (2d Cir. 1997)................................................................................. 6

*In re Application for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proc.*
   773 F.3d 456 (2d Cir. 2014)...................................................................... 8, 13

*In re Application of Abraaj Inv. Mgmt. Ltd. for an Ex Parte Order to Conduct Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. 1782*
   2023 WL 2674752 (S.D.N.Y. Mar. 29, 2023) ...................................... 5, 7, 8, 13

*In re Berlamont*
   2014 WL 3893953 (S.D.N.Y. Aug. 4, 2014) ................................................. 13

*In re Catalyst Managerial Servs., DMCC*
   680 F. App'x 37 (2d Cir. 2017) ................................................................... 13

*In re del Valle Ruiz*
   939 F.3d 520 (2d Cir. 2019)........................................................................... 6

*In re Edelman*
   295 F.3d 171 (2d Cir. 2002)........................................................................... 6

*In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings*
   2016 WL 702327 (S.D.N.Y. Feb. 18, 2016)................................................... 14

*In re Hulley Enterprises, Ltd.*
    358 F. Supp. 3d 331 (S.D.N.Y.)................................................................................. 10

*In re Multiflora Int'l Ltd.*
    2021 WL 2662122 (N.D. Cal. June 29, 2021) ..................................................... 12

*In re Rodriguez Guillen*
    2020 WL 3497002 (S.D.N.Y. June 29, 2020) ..................................................... 13

*In re Safra*
    2022 WL 3584541 (S.D.N.Y. 2022)..................................................................... 11

*In re Zouzar Bouka; Vision Indian Ocean S.A.*
    2022 WL 15527657 (S.D.N.Y. Oct. 28, 2022) ................................................... 11

*Intel Corp v. Advanced Micro Devices, Inc.*
    542 U.S. 241 (2004)...................................................................................... passim

*Mees v. Buiter*
    793 F.3d 291 (2d Cir. 2015)........................................................................... 8, 9

*Minatec Fin. S.a.r.l. v. SI Gro. Inc.*
    2008 WL 3884374 (N.D.N.Y Aug. 18, 2008) ..................................................... 12

*Nat'l Broad. Co., Inc. v. Bear Starns & Co., Inc.*
    165 F.3d 184 (2d Cir. 1999)................................................................................. 10

*Nike, Inc. v. Wu*
    349 F. Supp. 3d 310 (S.D.N.Y. 2018)................................................................... 7

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*
    376 F.3d 79 (2d Cir. 2004).................................................................................... 6

*ZF Automotive US, Inc. v. Luxshare, Ltd.*
    142 S. Ct. 2078 (2022).......................................................................................... 10

**Statutes**

28 U.S.C. § 1331....................................................................................................... 2

28 U.S.C. § 1391....................................................................................................... 2

28 U.S.C. § 1782............................................................................................... passim

28 U.S.C. § 1782(a) .............................................................................................. 2, 5

**Other Authorities**

Code of Penal Procedure of Guatemala, Decree Number 51-92, Article 116.- Civil Party.
(Amended by Article 9 of Decree 32-96, Article 12 of Decree 103-96 and Article 15 of Decree
79-97, all of the Congress of the Republic) ................................................................................. 9

Code of Penal Procedure of Guatemala, Decree Number 51-92, Article 117.- Aggrieved party.
(Amended by Article 7 of Decree 18-2010 of the Congress of the Republic) ........................... 9

I.      INTRODUCTION

Banco de los Trabajadores ("Bantrab") seeks an *ex parte* order under 28 U.S.C. § 1782, authorizing it to take discovery from Standard Chartered Bank International (Americas) Ltd. ("Standard Chartered" or "Discovery Target")—a company that is found in the Southern District of New York.[1] Bantrab seeks this discovery for use in proceedings pending before two Guatemalan courts: (1) the Juzgado de Primera Instancia de Extinción de Dominio ("the Guatemalan Forfeiture Court") and (2) the Juzgado Séptimo de Primera Instancia Penal, Narcoactividad y Delitos Contra el Ambiente ("the Guatemalan Criminal Court") (collectively, the "Guatemala Proceedings").[2]

Bantrab is a special purpose banking institution with the mission of fostering the well-being of Guatemalan workers by promoting savings. To do so, Bantrab, among other things, provides special loans to Guatemalan workers. These include loans to cover their emergency needs, to purchase or repair homes or farms, or to help artisans and family businesses. Bantrab is the bank of the working people of Guatemala.

In 2012, three former high-ranking Bantrab officials[3] (the self-proclaimed "G3") and Hidalgo Socorro[4], a Venezuelan citizen, entered into an illicit agreement to take control of Bantrab through a kickback scheme. According to the illicit agreement, the G3 were to get a 50%

---

[1] A copy of the subpoena Bantrab seeks to serve on Standard Chartered is attached as Exhibit A to the Declaration of Michael A. Fernández. All references to exhibits in this Memorandum of Law refer to the corresponding exhibit in the concurrently filed Declaration of Michael A. Fernández.

[2] Case numbers 01175-2016-00017 ("the Forfeiture Proceeding") and C-01079-2016-00158 ("the Criminal Proceeding"), respectively. A copy of orders from each court are attached as Composite Exhibit B.

[3] Sergio Hernandez, President of Bantrab's Board of Directors; Eduardo Liu, Director of the Board; and Ronald Garcia, Bantrab's General Manager.

[4] Socorro is the subject of a separate § 1782 application, Case No. 1:23-mc-21280-DPG, filed *ex parte* in the Southern District of Florida.

stake in the company that, if everything went according to their secret plan, would own 80% of Bantrab's stock capital. To carry out the scheme, Socorro funneled $20 million into DHK Finance, Inc. ("DHK"), and used DHK to purchase preferred stock in Bantrab. DHK is wholly owned by Brumby Shipholding, S.A., a company owned by Socorro and Enoc Martinez. The G3 were then to manipulate the preferred stock dividends and pay back their share of the $20 million over four years.

The Guatemala Proceeding before the Guatemala Criminal Court involves accusations against Socorro and the G3 of fraud, conspiracy, and illegal association. The Guatemala Proceeding before the Guatemala Forfeiture Court involves the origin of the funds DHK used to purchase the shares.

The Venezuelan press and a representative from The Venezuelan National Assembly have alleged that the source of the $20 million is an illicit deal between Socorro and Petróleos de Venezuela, S.A. (the Venezuelan state-owned oil and natural gas company known as "PDVSA"), where Socorro, through his company called Brumby Shipholdings, sold tugboats to PDVSA at ten times their market value, through a scheme involving kickbacks and other payments. *See* Composite Exhibit C.

One of the central issues in the Forfeiture Court is determining the source of the funds DHK and Socorro used to purchase shares in Bantrab. These funds were channeled through Standard Chartered, where DHK has a business checking account. Getting to the bottom of these issues remains critical for Bantrab in the Guatemala Proceedings.

## II.   JURISDICTION AND VENUE

This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1782. Venue in this District is proper under 28 U.S.C. § 1391 because Standard Chartered resides in

this District, a substantial part of events giving rise to the proceeding occurred in this District, and the documents sought in Bantrab's subpoena to Standard Chartered are found in this District.

III.     **PARTIES**

        *A.      Bantrab*

Bantrab is a special purpose banking institution created by decree of law number 383 of October 1, 1965, of the Republic of Guatemala. As a financial institution, Bantrab is a highly regulated entity governed by its *Ley Orgánica del Banco de los Trabajadores*, Bantrab's bylaws; the *Ley de Bancos y Grupos Financieros*, Guatemala's Banking Laws; the *Ley de Sociedades Financieras Privadas*, Guatemala's laws governing private financial institutions, where applicable; and the laws of Guatemala generally.

From the beginning, Socorro, the G3, and DHK—beneficially owned by Socorro—concealed their illicit kickback scheme. Ignorant of DHK's true intentions, in August of 2013, Bantrab issued 15,655,000 preferred shares to DHK in exchange for $20 million. The SIB had authorized the sale of the preferred shares in May 2013.

The notorious, widely publicized Guatemala Proceedings against Socorro and DHK, combined with the illicit source of the funds used to invest in Bantrab, caused Bantrab severe reputational and economic damage. When news of these events became public on April 8, 2016, it created great uncertainty and unease among the bank's clients. There was a multi-million dollar outflow of deposits, jeopardizing the Bank's operations and the resulting payment of dividends (which are not guaranteed) to Bantrab's common shareholders—the workers of Guatemala. *See* Composite Exhibit D.

Therefore, as further set forth below, and explicitly under Guatemalan law, Bantrab is an interested party with respect to the Guatemala Proceedings.

### B.      *Standard Chartered*

Standard Chartered is found in this District. Standard Chartered maintains its Americas

headquarters at 1095 Avenue of the Americas, New York, New York 10036. *See* Exhibit E.

Standard Chartered is Brumby Shipholding's bank. Of the $20 million DHK used to purchase the

preferred shares in Bantrab, which were transferred from DHK's JP Morgan[5] bank account to

Bantrab, at least $7.5 million originated from Brumby's Standard Chartered bank account. *See*

Exhibit F. As DHK's bank records filed with the Forfeiture Court show, the Standard Chartered

transfer occurred within the District. *Id*. On information and belief, the Standard Chartered bank

account was managed and maintained by a team in this District.

DHK (again, wholly owned by Brumby Shipholdings) and Socorro (owner of Brumby

Shipholdings) are the subject of the Guatemala Proceedings. DHK is subject to the *Orden de*

*Embargo, Secuestro y Suspensión de Derechos de Propiedad* from the Forfeiture Court seizing

DHK's Series "B" preferred shares and suspending all its rights over the shares. Both

proceedings are still pending.

## IV.    RELIEF REQUESTED

By this Application, Bantrab seeks permission to take discovery from Standard Chartered

regarding the source of the $20 million for use in the Foreign Proceedings, which is precisely the

purpose of 28 U.S.C. § 1782 discovery.

Bantrab is an interested party in the Guatemala Proceedings because DHK (beneficially

owned by Socorro), is still a shareholder in the bank and Bantrab is a civil party in the

Guatemala Criminal Court.[6] DHK is also the subject of a pending proceeding in the Guatemala

---

[5] JP Morgan is the subject of a separate § 1782 application, Case No. 1:23-mc-21665-RNS, filed *ex parte* in the Southern District of Florida.
[6] *See infra* n.8 for definition of "civil party."

Forfeiture Court, its president is the subject of the pending proceeding in the Guatemala Criminal

Court, and its assets in Bantrab are frozen by order of the Criminal Court. For each and every

year following 2015, Bantrab has continued to account for DHK's dividends by entering the

approved dividends in its accounting records according to the standard procedures for financial

institutions. Because DHK's preferred shared and accounts are frozen by order of the Criminal

Court, no monies can be either withdrawn from or deposited to them. In the meantime, Bantrab's

reputation continues to be harmed by having DHK as a shareholder. Justice requires that Bantrab

be permitted to obtain this discovery for use in the Guatemala Proceedings.

V.        **MEMORANDUM OF LAW**

> *A.        Requirements for Discovery under 28 U.S.C. § 1782*

Section 1782 authorizes district courts to order persons located in the United States to

produce discovery for use in foreign legal proceedings. 28 U.S.C. § 1782. The "scope of

assistance federal courts could provide for foreign proceedings" under § 1782 has been

"substantially broadened" over time. *Intel Corp v. Advanced Micro Devices, Inc.*, 542 U.S. 241,

247-48 (2004).

To obtain discovery under § 1782, an applicant must first meet the statute's requirements

to show: (i) the person from whom discovery is sought resides or is found within the District; (ii)

(iii) the discovery is "for use" in a proceeding before a foreign or international tribunal,

"including criminal investigations conducted before formal accusation"; and (iii) the applicant is

an interested person. 28 U.S.C. § 1782; *In re Application of Abraaj Inv. Mgmt. Ltd. for an Ex*

*Parte Order to Conduct Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. 1782*,

2023 WL 2674752, at *2 (S.D.N.Y. Mar. 29, 2023).

Once the statutory prerequisites are met, courts are "free to grant discovery in its discretion." *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 78 (2d Cir. 1997). In exercising its discretion, courts consider four discretionary factors set forth by the Supreme Court in *Intel*: (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies"; and (iv) whether the discovery sought is "unduly intrusive or burdensome[.]" 542 U.S. at 264-65.

District courts have broad discretion in granting judicial assistance to foreign tribunals to obtain evidence for use in a foreign proceeding, considering the two aims of § 1782: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004).

This Application easily satisfies § 1782's statutory prerequisites and all four discretionary *Intel* factors, so that a grant of the Application is warranted.

### B.        The Application Satisfies the Statutory Requirements of 28 U.S.C. § 1782

#### (1)        Standard Chartered is Found in this District

The first element is easily met as Standard Chartered is found in this District. Although 28 U.S.C. § 1782 does not define "found in," courts apply a "flexible reading of the phrase 'resides or is found.'" *In re Edelman*, 295 F.3d 171, 178 (2d Cir. 2002). As such, the Second Circuit has held that the phrase "reside or is found in" in 28 U.S.C. § 1782 extends the limits of personal jurisdiction. *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019).

Here, Standard Chartered operates within this District. Standard Chartered's Americas headquarters and office are located within this District. Exhibit E; Standard Chartered, *Annual Report 2022*, at 467 (2023), https://av.sc.com/corp-en/content/docs/standard-chartered-plc-full-year-2022-report.pdf.[7] In *Abraaj*, the court found that a bank was subject the court's jurisdiction because it purposefully directed its activities at the District, regularly transacted business in the District, and maintained an office or branch in the District. 2023 WL 2674752, at *5. Further, the court granted the 28 U.S.C. § 1782 petition because the subpoena the applicants sought to serve on the bank related to its activities in the District. *Id.* ("Where, as here, 'the Subpoenas, which seek discovery related to transactions routed through these New York accounts, are themselves connected to the Banks' contacts with the forum' 'this Court may readily conclude that there is a sufficient nexus between the Banks' activities in the forum and the Subpoenas.'") (quoting *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 332 (S.D.N.Y. 2018)). Bantrab's proposed subpoena, like the one in *Abraaj*, seeks discovery related to transactions that DHK and Socorro routed through Standard Chartered (and subsequently DHK's JP Morgan accounts) in New York. *See* Exhibit A, F. Additionally, compliance with the subpoena comports with fair play and substantial justice because the subpoena is not overly burdensome and seeks information that litigants typically seek from banks (as further discussed below).

Accordingly, this Application satisfies the prerequisite that Standard Chartered is found in the Southern District of New York.

---

[7] Last visited Apr. 13, 2023.

(2)      *The Request Seeks "Evidence" within the Meaning of 28 U.S.C. § 1782*

This prong of the test is easily met. This Application seeks specific, targeted documentary evidence from Standard Chartered regarding the funds used to purchase the preferred shares in Bantrab. *See* Exhibit A. Those documents are evidence within the meaning of § 1782. *Cf. Abraaj*, 2023 WL 2674752, at *6 (granting a § 1782 application seeking evidence in the form of document production, which are "routinely produced by banks to satisfy discovery requests"); *In re Application for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proc.*, 773 F.3d 456, 462 (2d Cir. 2014) (affirming document discovery for use in a foreign criminal proceeding is proper under § 1782).

(3)      *The Evidence Requested is "For Use" in the Guatemala Proceedings, Each of which is a "Foreign Proceeding"*

The discovery Bantrab seeks through this Application is for use in the ongoing Guatemala Proceedings where the source of the funds used to purchase preferred shares in Bantrab is at issue. Courts liberally construe this requirement and decline "to read into the statute requirements that are not rooted in its text." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) (holding that § 1782's "for use" requirement is satisfied merely by showing that the materials sought are to be used at some stage of a foreign proceeding, without need to consider the necessity for the evidence); *see also In re Accent Delight Int'l Ltd.*, 869 F. 3d 121, 133 (2d Cir. 2017) (finding applicant satisfied § 1782's "for use" requirement by "mak[ing] a showing" it can "inject the requested information into [the] foreign proceeding."). We take each element in turn.

First, the "for use" requirement is met where the applicant has, or will be, a party to a foreign proceeding or investigation with procedural rights to submit evidence, without regard as to whether the evidence will ultimately be admissible in the foreign tribunal. *See Accent Delight*, 869 F.3d at 132 (finding the "for use" statutory requirement met where the applicants were

8

"parties to that [foreign] proceeding," and "retain[ed] the procedural right to submit the requested documents to the magistrate overseeing the investigation"); *Mees v. Buiter*, 793 F.3d at 299 ("Indeed, in the typical § 1782 application, the applicant has already initiated a foreign proceeding and seeks discovery entirely to help her prove her claims, not plead them.").

Here, Bantrab is a party in the Guatemala Proceedings. Bantrab joined the case before the Guatemala Criminal Court as "*querellante adhesivo*," which can be analogized as the "civil party,"[8] and is an aggrieved party[9] in the case before the Guatemala Forfeiture Court. Further, under Guatemala law, Bantrab also has the right to submit evidence to the prosecutors responsible for the Guatemala Proceedings. Thus, Bantrab can plainly use the evidence obtained here in the Guatemala Proceedings.

Second, the Guatemala Proceedings are, very certainly, the kind of "foreign proceedings" contemplated by § 1782 and those Guatemala Proceedings are well underway. The matter before the Guatemalan Criminal Court involves allegations of fraud, conspiracy, and unlawful

---

[8] Code of Penal Procedure of Guatemala, Decree Number 51-92, Article 116.- Civil Party. (Amended by Article 9 of Decree 32-96, Article 12 of Decree 103-96 and Article 15 of Decree 79-97, all of the Congress of the Republic) ("In crimes susceptible of public action, the legally capable injured party or its representative or guardian in the case of minors or incapable persons, or the tax administration in matters under its jurisdiction, may initiate criminal prosecution or adhere to that already initiated by the Public Prosecutor's Office.
. . .
The civil party may always cooperate with and assist the prosecutor in the investigation of the facts. For this purpose, it may request, when it considers appropriate, the practice and receipt of preliminary evidence as well as any other procedure provided for in this Code. He/she shall make his/her requests orally or by simple letter addressed to the prosecutor who shall consider them and act accordingly.").

[9] Code of Penal Procedure of Guatemala, Decree Number 51-92, Article 117.- Aggrieved party. (Amended by Article 7 of Decree 18-2010 of the Congress of the Republic):

"This Code defines the aggrieved party as . . .
    3. The representatives of a company for the crimes committed against it and to the partners with respect to those committed by those who direct, administer or control it . . . ."

association by Socorro and the G3. The matter before the Forfeiture Court, whose objective is to recover the goods, gains, products, and fruits generated from illicit or criminal activities, relates to the source of the $20 million DHK used to purchase preferred stocks in Bantrab.

Cases before foreign courts, like the criminal and forfeiture cases at issue here, are precisely the "proceedings" which § 1782 was created to support. *ZF Automotive US, Inc. v. Luxshare, Ltd.*, 142 S. Ct. 2078, 2087 (2022) (A foreign court, quasi-judicial body, or other governmental adjudicatory body following the practices and procedures of a foreign country and is a foreign tribunal conducting "proceedings" under § 1782); *Nat'l Broad. Co., Inc. v. Bear Starns & Co., Inc.*, 165 F.3d 184, 189 (2d Cir. 1999) (noting that Congress broadened § 1782 several times, including in 1964 when Congress amended the statute, which would "facilitate the collection of evidence for use 'before a foreign administrative tribunal or quasi-judicial agency.'").

### (4)    Bantrab is an "Interested Person"

Bantrab is an "interested person" under the statute because it is before the Guatemalan Criminal Court as a "*querellante adhesivo*" (civil party) and also an aggrieved party. In the proceedings before the Forfeiture Court, Bantrab is an interested party because it issued preferred shares and continues to account for interest and dividends despite the freeze order.

Accordingly, because Bantrab is a party in the Guatemala Proceedings (in addition to being the victim), it qualifies as an "interested person" and this statutory requirement is met. *See In re Hulley Enterprises, Ltd.*, 358 F. Supp. 3d 331, 342 (S.D.N.Y.) ("as parties to the proceedings in the Dutch Appellate Court, petitioners are clearly 'interested persons.'")

### C.    All the Intel Discretionary Factors Favor Granting the Application

Each *Intel* discretionary factor supports granting the Application.

10

*(1)     Standard Chartered is Not A Party In the Guatemala Proceedings*

The first *Intel* factor, that is, whether the party from whom discovery sought is a party in the foreign proceeding, supports § 1782 discovery here. This factor generally weighs in favor of an applicant when the respondent is not a party to the foreign proceeding "because 'the need for § 1782(a) aid generally is not apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.'" *In re Zouzar Bouka; Vision Indian Ocean S.A.*, 2022 WL 15527657, at *8 (S.D.N.Y. Oct. 28, 2022) (quoting *Intel*, 542 U.S. at 264).

Here, Standard Chartered is not a participant in either of the Guatemala Proceedings. Instead, Socorro and his company, DHK, are named parties in the Guatemala Proceedings, although Socorro has failed to appear before Guatemalan courts since 2016. Accordingly, the evidence that Standard Chartered has in its possession not only "may be unobtainable" without § 1782 discovery, but most likely can never be obtained without this discovery, thus weighing in favor of granting this Application. *Intel*, 542 U.S. at 264 ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."); *In re Safra*, 2022 WL 3584541, at *4 (S.D.N.Y. 2022) ("Here, the material sought by subpoena might not be accessible by means other than Section 1782, because none of the subpoena targets is a party to the proceeding . . . and thus may not be within the [] court's jurisdictional reach.").

*(2)     The Nature and Receptivity of the Foreign Tribunal to the Requested Discovery*

This factor only weighs against granting an application if there is "authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of § 1782." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) Courts need not make a finding of

11

discoverability under the foreign jurisdiction's laws for this factor to weigh in favor of an applicant. *Application of Gianoli Alduante*, 3 F.3d 54, 57 (2d Cir. 1993).

   Here, any evidence obtained through this Application will be used in the pending Guatemala Proceedings, and Guatemalan courts will be receptive to such evidence. *C.f. Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("Accordingly, as a district court should not consider the *discoverability* of the evidence in the foreign proceeding, it should not consider the *admissibility* of evidence in the foreign proceeding in ruling on a section 1782 application."). In fact, other courts have already determined that Guatemalan courts will receive evidence obtained through § 1782 for use in a Guatemalan proceeding. *See e.g.*, *In re Multiflora Int'l Ltd.*, 2021 WL 2662122, at *4 (N.D. Cal. June 29, 2021) (finding that the second Intel factor weighs in favor of granting a § 1782 application when there is no evidence that a Guatemalan court would reject judicial assistance from the court).

### (3)   Bantrab is Not Circumventing any Foreign Law Proof-gathering Restrictions

   Bantrab seeks this discovery in good faith and is not "actively seeking to circumvent the foreign tribunal's discovery methods and restrictions," which is what would be required for this factor to "counsel against section 1782 relief." *Minatec Fin. S.a.r.l. v. SI Gro. Inc.*, 2008 WL 3884374, at *8 (N.D.N.Y Aug. 18, 2008). Under Guatemala law, a "*querellante adhesivo*" is always allowed to collaborate and assist prosecutors in investigations and in obtaining evidence. There are no restrictions on a victim's or "*querellante adhesivo's*" ability to gather lawfully evidence that it may wish to provide to prosecutors to aid them in legal proceedings, nor would it make sense for such restrictions to exist.

12

Case 1:23-mc-00163   Document 3   Filed 05/09/23   Page 18 of 20

*(4)     The Discovery Requests are Not Unduly Intrusive or Burdensome*

Finally, Bantrab's discovery requests are neither unduly intrusive nor burdensome. An applicant satisfies this requirement when he has sufficiently shown that the requested documents support arguments in a foreign proceeding and the request comports with the Federal Rules of Civil Procedure. *See In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 39 (2d Cir. 2017). Here, the proposed subpoena seeks a discrete universe of documents relating to the Guatemala Proceedings. Specifically, the requests seek documents in Standard Chartered's possession, custody, or control, related to the origin of the $20 million used to purchase preferred shares in Bantrab. Thus, the requests are not "unduly intrusive or burdensome." *Abraaj*, 2023 WL 2674752, at *6 (finding that proposed subpoenas to banks requesting documents related to transfers in a particular account, and for a defined time frame, are "not unduly burdensome or intrusive, as the materials [sought] through the subpoenas are routinely produced by banks to satisfy discovery requests"); *see, e.g.*, *In re Rodriguez Guillen*, 2020 WL 3497002, at *3 (S.D.N.Y. June 29, 2020) (noting that a correspondent bank "should be able to search for and produce the records of wire transfers without significant burden"); *In re Berlamont*, 2014 WL 3893953, at *2 (S.D.N.Y. Aug. 4, 2014), *aff'd sub nom. In re Application for an Ord. Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proc.*, 773 F.3d 456 (2d Cir. 2014) (finding *Intel* factors weigh in favor of granting the application where "petitioner is seeking a specific, discrete set of documents that are easily identifiable and not unduly burdensome.")

In summary, this application satisfies all the § 1782 statutory requirements, and all four of the *Intel* factors militate in favor of granting it.

13

### D.     *28 U.S.C. § 1782 Applications Are Typically Filed Ex Parte*

As a general matter, applications for discovery under § 1782 are typically filed *ex parte*. *In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings*, 2016 WL 702327, at *1 n.3 (S.D.N.Y. Feb. 18, 2016). Any due process and Rule 45 concerns can be adequately addressed and protected once the application is granted. *Id.*; *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon or improper for district courts to grant applications made pursuant to § 1782 ex parte. The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3).")

Here, important reasons exist for proceeding *ex parte*. The notorious and public legal proceedings against Socorro and DHK, and the alleged illicit source of the funds used to invest in Bantrab, have caused Bantrab severe reputational and economic damage. At the time the information regarding the Guatemala Proceedings first became public in Guatemala, it created great uncertainty and unease among the bank's clients and produced a multi-million-dollar outflow of deposits jeopardizing the Bank's operations and the resulting payment of dividends (which are not guaranteed) to Bantrab's common shareholders, the workers of Guatemala. Accordingly, the Court's consideration and grant of the Application should proceed *ex parte*. A proposed order is attached as Exhibit G.

## VI.    CONCLUSION

For these reasons, Bantrab respectfully petitions this Court to enter the proposed *ex parte* order, attached as Exhibit G, authorizing issuance of the subpoena and directing Standard Chartered to respond to the subpoena in accordance with such Order.

Dated: May 9, 2023

Respectfully submitted,

**RIVERO MESTRE LLP**

By: s/ Jorge A. Mestre
JORGE A. MESTRE
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305)-445-2500
Fax: (305) 445-2505
Email: jmestre@riveromestre.com

MICHAEL A. FERNÁNDEZ
565 Fifth Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 880-9451
Email: mfernandez@riveromestre.com
Email: receptionist@riveromestre.com

## CERTIFICATE OF SERVICE

I certify that on May 9, 2023, I electronically filed this petition and application with the Clerk of the Court using CM/ECF.

s/ Jorge A. Mestre
JORGE A. MESTRE